**UNITED STATES v. TRACT OF LAND
IN CITY OF CHICAGO, COOK
COUNTY, ILL., et al.**

Civ. A. No. 51 C 446.

United States District Court
N. D. Illinois, E. D.

Feb. 25, 1953.

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., for petitioner.

Kirkland, Fleming, Green, Martin & Ellis, Chicago, Ill., for defendant.

PERRY, District Judge.

By a contract of sale and a quitclaim deed of August 15, 1949, the Reconstruction Finance Corporation conveyed to the National Tea Company in fee simple the subject property, a surplus war asset, for a stated consideration of four million dollars. Among other things, the Government reserved for itself a "dormant estate" in the facilities for a period of 20 years which could be activated by any of the Secretaries of the Department of Defense at any time during its existence for one or more periods not exceeding 5 years duration each.

Activation was to be effected by written notice from the Secretary who would set out therein specific instructions as to removal of the defendant's improvements. Upon receipt of such notice, the defendant

was to complete this action within the shortest possible time and prior to the expiration of 120 days from the date upon which notice of activation was received. By virtue of Section 17 of the contract of sale fair and reasonable "compensation shall be determined by the Secretary and shall be at a rate not in excess of the prevailing normal rental for similar industrial properties." The provisions expressly provided that the agreement relating to the dormant estate constituted covenants running with the land.

The record indicates that during the early part of January, 1951, the Government emphasizing the urgent need for possession proposed that the Studebaker Corporation be granted immediate possession as lessee. The Government considered this method more satisfactory than the formal activation of the dormant estate. Due to the disagreement as to the rental, this proposal never materialized.

On February 14, 1951, the military authorities forwarded to the defendant a formal notice of the activation of the dormant estate for a period of five years from the date of the receipt of this notice. Compensation was not fixed therein. On March 1, 1951, the military authorities forwarded additional instructions. It was not until the communication of March 9, 1951, that the military determined the fair and reasonable compensation as $516,022.50 per annum net to the owner.

On March 16, 1951, the Government filed its petition pursuant to the provisions of 40 U.S.C.A. § 257. The Government sought thereby to acquire by condemnation an interest in and the use of the land in question for a period beginning February 15, 1951, and ending February 15, 1956. On the same day the Court ordered the defendant to deliver possession immediately and to remove its personal property. On July 26, 1951, the Assistant Secretary of the Air Force filed a "declaration of taking" which was dated March 16, 1951. The gross sum estimated to be just compensation for the estate taken for the period from March 16, 1951 to February 15, 1952, was stated as $473,020.68, which sum was deposited with the Court. On August 25, 1951, the Government filed its demand for a trial by jury of the issue of just compensation.

On February 26, 1952, the defendant sought appropriate relief in a petition wherein it alleged that it was entitled to just compensation in the full amount for the use and occupation of the premises for a period of 5 years and that the Government's declaration and attached schedule were vague in not specifying whether the condemnor would be obligated to pay the cost of taxes and insurance and maintenance during this period. On April 1, 1952, the Government filed its answer and amendment to the petition for condemnation wherein it advanced its rights under the contract of sale and quitclaim deed of 1949. In its prayer, the Government asked that the Court enter findings of fact and conclusions of law and judgment determining, among other things, that the determination of the Secretary of the Air Force, namely, $516,022.50 per annum is the just net fair market rental value for the use of the property for such period; that the Government be given credit for all expenditures made by it to restore the capacity of the property which were necessitated by defendant's failure to fulfil its obligations under paragraphs 11 and 20 of the contract of sale, which provided that the defendant preserve and maintain this property in the specific manner.

The defendant has moved to strike both the Government's answer and amendment to the petition for condemnation. This detailed motion can be resolved into two basic propositions. First, the Government initiated these proceedings under the condemnation statute to take possession of the estate; it cannot now seek to enforce its rights under the contract of sale. The defendant under the statute is entitled to compensation in full for the estate to be fixed by a jury in one entire award. Secondly, counterclaim cannot be entertained in this action because this statutory proceeding is limited in its scope to the deter-

mination of the amount of compensation award.

It is the view of this Court that the first contention of the defendant must be sustained. To allow the Government's answer and amendment to stand would, in effect, approve judicially a consent verdict as to the value of the land. No construction of either the contract of sale or the quitclaim warrants such approval. The absence of a provision for the application of condemnation proceedings as an alternative method of activating the dormant estate clearly indicates that such proceedings were not within the contemplation of the parties at the time of the execution of the instruments. This observation is vital, in the present case, where the defendant's contractual right to a maximum of a 120-day period for removal operations was limited considerably by the present proceedings. It becomes particularly significant when one considers that the parties agreed contractually that compensation was to be determined by the Secretary. The amount was not stipulated. As the contract stood at the time of execution, the defendant and the Government were in the same position as any parties to an agreement. If the determination by the Secretary was deemed unfair, the defendant could defend and seek judicial review thereof when the Government prosecuted its appropriate remedy under the contract. To allow the Government's prayer at this time would result in a withdrawal of these contractual rights. To sustain the Government's position would require the Court to bestow an absoluteness upon the Secretary's determination which is not contemplated in the contract itself.

In effect, the Government would in this action acquire greater rights than are contemplated in the agreement. Ac-cordingly, it is the view of this Court that, since the contract made no provision for condemnation proceedings, the Government could either assert its rights under the contract by appropriate action, or it could avail itself of the provisions of the condemnation statute. Since it chose the latter, the defendant, pursuant to the statute, is entitled to have the entire award determined in a trial by jury.

The present case can be distinguished from the cases of Danforth v. U. S., 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240; Muschany v. U. S., 324 U.S. 49, 65 S.Ct. 442, 89 L.Ed. 744, and Albrecht v. U. S., 329 U.S. 599, 67 S.Ct. 606, 91 L.Ed. 582, wherein the contracts were given effect. In these cases, condemnation proceedings were the subject of contract provisions and were clearly within the contemplation of the parties. Such is not the situation in the instant case.

This Court is also of the view that it should sustain the defendant's second contention that the Government's counterclaim should not be entertained in this condemnation proceeding. The award in a condemnation proceeding is limited to just compensation for property taken by the sovereign in the exercise of its power of eminent domain. Chesapeake & Ohio Railroad Co. v. Greenup County, 6 Cir., 175 F.2d 169. The language of 40 U.S.C.A. § 258a makes no such provision. It is true that the case of Albrecht v. U. S., supra, includes language, unnecessary to the final decision, which might indicate that the Government could prosecute a counterclaim in a condemnation proceedings. In that case, however, the compensation award was controlled by the contract and not by the statute, as in the instant case. Accordingly, the defendant's motion to strike the answer and the amendment to the petition for condemnation is sustained.